NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| L.E.A.D., Inc. | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-cv-4398-BRM-LHG |
| NORTHEASTERN IMPORT-EXPORT, INC., TEXTILE RECOVERY SERVICES, INC., ISLAND TEXTILE, INC., NEC EXPORTS, CORP., NORTHEASTERN IMPORT-EXPORT, CORP., and RONALD TOSCANO, | OPINION |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Ronald Tuscano ("Tuscano"), Textile Recovery Services, Inc. ("TRS"), Island Textile, Inc. ("Island"), Northeastern Import-Export Corp. ("NIEC"), and NEC Exports Corp.'s ("NEC") (collectively, "Moving Defendants") Motion to Dismiss[1] pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6.) Plaintiff L.E.A.D., Inc. ("LEAD") opposes the Motion. (ECF No. 11.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Moving Defendants' Motion to Dismiss is **GRANTED**.

---

[1] Moving Defendants do not title their Motion a Partial Motion to Dismiss, but they do not seek to dismiss the Amended Complaint in its entirety. (Br. in Supp. of Mot. to Dismiss (ECF No. 9) at 1.)

I. **BACKGROUND**

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

This case arises from a contract between LEAD, a nonprofit 501(c)(3) organization that engages in drug abuse resistance education, and Defendant Northeastern Import-Export, Inc. ("Northeastern"). (Am. Compl. (ECF No. 3) ¶¶ 1, 21).) LEAD alleges Tuscano is the principal of NIEC, TRS, Island, NEC, and Northeastern. (*Id.* ¶ 7.) LEAD claims Defendants "own, maintain, operate, and service collection bins [(the "Bins")] designed to receive products that can be recycled, including used clothing." (*Id.* ¶ 15.) LEAD contends the recycling of the products collected in the bins generates revenue for charities, such as LEAD, that sponsor the Bins. (*Id.*)

**A. The Agreement**

On May 15, 2014, Toscano, on behalf of Northeastern, executed a Payment Schedule Agreement ("PSA") with DARE NJ ("DARE"), a 501(c)(3) organization engaged in drug abuse resistance education. (*Id.* ¶ 17; Payment Schedule Agreement (ECF No. 4, Ex. A) at 8.) The PSA was a joint venture in which Northeastern would collect clothing through the Bins and purchase some of the collected items from DARE. (ECF No. 3 ¶ 18; ECF No. 4, Ex. A at 1.) The PSA stated Northeastern would pay $225,000 to DARE as follows:

> (a) $100,000 at the time of the signing of [the PSA]; and
>
> (b) $125,000 ("Initial Balance") to be paid in the following manner: [Northeastern] shall pay [DARE] $25,000 per year for five (5) years plus 10% simple interest per annum on the unpaid balance payable in monthly payments of $2,655.88. The first payment

> will be made July 1, 2014 and each subsequent payment shall be made by the first day of each month thereafter. The final payment shall be made by June 1, 2019 and shall consist of a lump sum payment of both the remaining principal and interest. There shall be no penalty for pre-payment of this sum.

(ECF No. 3 ¶ 19; ECF No. 4, Ex. A at 1.) As security on the payments owed to DARE, Northeastern pledged as collateral one hundred (100) Bins, each of which was said to have a value of $1000. (ECF No. 3 ¶ 20; ECF No. 4, Ex. A at 1.) In the event of default, DARE would "automatically become the owner and sole possessor of the [p]ledged [Bins]." (*Id.*)

### B. LEAD Becomes a Party to the PSA

On January 23, 2015, LEAD purchased the recycling contract from DARE with Northeastern's consent. (ECF No. 3 ¶ 21; Consent to Assignment Side Letter (ECF No. 4, Ex. B)).) On September 14, 2016, LEAD entered into an Amendment to the PSA (the "Amendment") with Northeastern. (ECF No. 3 ¶ 22; Amendment to May 14, 2014 Payment Agreement (ECF No. 4, Ex. C)).)

### C. The Terms of the Amendment and Northeastern's Alleged Breach

Pursuant to the Amendment, Northeastern was required to remove all but a maximum of 230 of the Bins in the area covered by the PSA. (ECF No. 4 ¶ 23; ECF No. 4, Ex. C at 1.) The Amendment stated Northeastern would be responsible for all costs associated with removing the Bins, and the ownership of the removed Bins would be transferred to LEAD. (ECF No. 4 ¶ 23; ECF No. 4, Ex. C at 1.) The Amendment required the transferred Bins to be "in [a] suitable condition for their intended purpose." (*Id.*) The Amendment provided LEAD would credit Northeastern—in the form of a deduction of money owed to LEAD under the PSA—for each Bin that was removed and conveyed to LEAD. (ECF No. 3 ¶ 24; ECF No. 4, Ex. C at 3.) Pursuant to the Amendment, Northeastern agreed to pay LEAD 10% annual interest on money owed under the

3

Amendment and the PSA. (ECF No. 3 ¶ 25; ECF No. 4, Ex. C at 3.) Northeastern agreed to pay a minimum of $1000 per month toward the arears and to pay off the full amount by the end of the original contract period. (*Id*)

LEAD alleges Northeastern defaulted on the PSA and Amendment by failing to make the September 2016 payment, as well as each payment after. (ECF No. 3 ¶ 26.) LEAD contends it informed Northeastern on December 28, 2016, "that other vendors would be taking over as many of [] Northeastern's [B]ins as the vendors would accept, due to [Northeastern's] breach of contract and significant arrearages owed to LEAD." (ECF No. 3. ¶ 27; ECF No. 4, Ex. D.) LEAD also informed Northeastern, because of the poor condition of the Bins, it would credit Northeastern with $300 per Bin against the amount Northeastern owed. (*Id.*) On February 6, 2017, LEAD advised Northeastern most of the Bins had not been removed. (ECF No. 3. ¶ 28; ECF No. 4, Ex. E.) LEAD advised Northeastern it would remove all the Bins at Northeastern's cost if the Bins were not removed by the close of business on February 15, 2017. (*Id.*)

On June 16, 2017, LEAD filed the Complaint. (ECF No. 1.) On July 31, 2017, LEAD filed the Amended Complaint. (ECF No. 3.) LEAD asserts claims for: (1) breach of contract against Northeastern (Count I); (2) breach of the covenant of good faith and fair dealing against Northeastern (Count II); (3) unjust enrichment against Moving Defendants (Count III); and (4) piercing the corporate veil against all Defendants (Count IV). Only Counts III and IV are at issue in this Motion. (ECF No. 9 at 1.)

## II.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at

4

228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426 (emphasis in original).

## III. DECISION

Moving Defendants seek dismissal of Counts III and IV of the Amended Complaint. (ECF No. 9 at 1.) Moving Defendants argue LEAD's claim for piercing the corporate veil (Count IV) must be dismissed because (1) piercing the corporate veil is not an independent cause of action, and (2) LEAD has not alleged sufficient facts to support piercing the corporate veil. (*Id.*) Finally, Moving Defendants argue LEAD's unjust enrichment claim (Count III) must be dismissed because (1) a party cannot assert an unjust enrichment claim that arises from a written agreement, and (2) LEAD has failed to allege facts to support a claim for unjust enrichment. (*Id.* at 1-2.)

### A. Piercing the Corporate Veil (Count IV)

Moving Defendants argue piercing the corporate veil is not an independent cause of action in New Jersey[2] (ECF No. 9 at 4.) Instead, they contend, piercing the corporate veil is a means of imposing liability on an underlying cause of action. (*Id.* (citing *Swift v. Pandey*, No. 13-cv-650, 2013 WL 6054853, at *12 (D.N.J. Nov. 13, 2013) (dismissing with prejudice a claim for piercing the corporate veil because it is "not a distinct cause of action"); *Chen v. HD Dimension Corp.*, No.

---

[2] The parties agree New Jersey law governs the PSA and Amendment. (ECF No. 9 at 5; ECF No. 11 at 7.)

10-cv-863, 2010 WL 4721514 (D.N.J. Nov. 15, 2010) (finding "piercing the corporate veil is not a mechanism by which legal liability is imposed per se, but rather an equitable remedy designed to remedy a fundamental unfairness perpetrated under the guise of the corporate form")).)

In opposition, LEAD argues piercing the corporate veil is a cognizable cause of action in New Jersey. (ECF No. 11 at 7.) In support of its opposition, LEAD cites several New Jersey state court cases, as well as cases in this Court, in which plaintiffs successfully sought to pierce the corporate veil. (*Id.* at 7-8.) In essence, LEAD argues it is possible for courts to invoke the doctrine of piercing the corporate veil "to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate a fraud, to accomplish a crime, or otherwise to evade the law." (*Id.* at 9 (citing *Tung v. Briant Park Homes, Inc.*, 670 A.2d 1092, 1096 (N.J. Super. Ct. App. Div. 1996)).)

However, the cases LEAD cites do not support its argument that piercing the corporate veil is an independent cause of action. In *Tung*, the court pierced the corporate veil to impose liability under the New Jersey Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-21, *et seq. Tung*, 670 A.2d. at 1094. Similarly, LEAD relies on *Dep't of Envtl. Protection v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983). (ECF No. 11 at 7-8.) In *Ventron*, the Supreme Court of New Jersey found piercing the corporate veil was not warranted but held a subsidiary could be held liable for a parent's pollution the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11, *et seq.* 468 A.2d at 154. The other cases upon which LEAD relies apply the doctrine of piercing the corporate veil to impose liability for other causes of action. *See Mueller v. Seaboard Commercial Corp.*, 73 A.2d 905, 908 (N.J. 1950) (finding a parent is liable for a subsidiary's conversion of property when the subsidiary was a "mere instrumentality" of the parent); *McColley v. Edison Corp. Center*, 697 A.2d 149, 154 (N.J. Super. Ct. App. Div. 1997) (piercing the corporate veil to impose liability on a parent for the subsidiary's torts); *Stochastic Decisions, Inc. v.*

7

*DiDomenico*, 565 A.2d 1133, 1137-38 (N.J. Super. Ct. App. Div. 1989 (piercing the corporate veil to impose liability on closely held subsidiaries for parent's fraud).

LEAD does not cite any case law to support its argument that piercing the corporate veil is an independent cause of action in New Jersey.[3] Therefore, Moving Defendants' motion to dismiss LEAD's claim for piercing the corporate veil (Count IV) is **GRANTED with prejudice**. *Swift*, No. 2013 WL 6054853, at *12 (finding piercing the corporate veil is not an independent cause of action and dismissing plaintiff's claim with prejudice). Because the Court finds New Jersey law does not recognize an independent cause of action for piercing the corporate veil, it need not consider Moving Defendants' argument that LEAD has not alleged sufficient facts to support piercing the corporate veil.

### B. Unjust Enrichment (Count III)

Moving Defendants argue LEAD's unjust enrichment claim should be dismissed for failure to state a claim. (ECF No. 9 at 12.) Under New Jersey law, a plaintiff asserting a claim for unjust enrichment must show: (1) defendant received a benefit; (2) defendant's retention of the benefit without payment would be unjust; (3) plaintiff expected remuneration at the time it conferred the benefit on defendant; and (4) the absence of remuneration enriched defendant beyond its contractual rights. *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted). "Although litigants may plead alternative and inconsistent claims, Fed. R. Civ. P. 8(d)(2) & (3), courts have on numerous occasions dismissed under Rule 12(b)(6) unjust enrichment claims that related to the same subject matter as valid contracts." *Premier Pork, L.L.C. v. Westin, Inc.*, No. 07-cv-1661, 2008 WL 724352, at *14 (D.N.J. Mar. 17, 2008) (citing *Estate of Gleiberman v.*

---

[3] In support of its argument, LEAD cites only a legal encyclopedia, which is not binding on this Court. (*See* ECF No. 11 at 10 (citing Bannon, John, *New Jersey Causes of Action*, New Jersey Law Journal, 2016).)

*Hartford Life Ins. Co.*, 94 F. App'x 944, 947 (3d Cir.2004); *Royale Luau Resort v. Kennedy Funding*, No. 07–1342, 2008 WL 482327 (D.N.J. Feb. 19, 2008); *Kohn v. Haymount Ltd. P'ship, LP (In re Int'l Benefits Group, Inc.)*, 06-cv-2363, 2007 WL 1875926 (D.N.J. June 28, 2007); *Oswell v. Morgan Stanley Dean Witter & Co.*, No. 06-cv-5814, 2007 WL 1756027 (D.N.J. June 18, 2007).

Here, LEAD alleges "Tuscano, TRS, Island, NEC and Northeastern Corp. benefited from receipt of textiles as a result of Plaintiff's PSA and Amendment with . . . Northeastern, from which [LEAD] received no compensation." (ECF No. 3 ¶ 37.) LEAD expressly pleads its unjust enrichment claim "relate[s] to the same subject matter as [the underlying] contracts." *See Premier Pork, L.L.C.*, 2008 WL 724352, at *14. LEAD has asserted a claim for breach of contract (Count I), which is not at issue in this Motion. (ECF No. 3 ¶¶ 29-31.) "Claims for unjust enrichment . . . are only supportable when the parties' rights are not governed by a valid, enforceable contract." *Estate of Gleiberman*, 94 F. App'x at 947 (citing *Suburban Transfer Service, Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983)); *see also Royale Luau Resort v. Kennedy Funding*, No. 17-cv-1342, 2008 WL 482327 (D.N.J. Feb. 19, 2008) (dismissing unjust enrichment claim even where plaintiff alleged the contract was not valid).

Furthermore, to the extent LEAD's unjust enrichment claim does not relate to the same subject matter as the PSA and the Amendment, the Court finds LEAD has not adequately asserted a claim against Tuscano, TRS, Island, NEC and Northeastern Corp. Although LEAD alleges those Defendants "benefited from receipt of textiles" under the PSA and Agreement, "from which [LEAD] received no compensation" (ECF No. 3 ¶ 37), LEAD does not allege it expected remuneration from Tuscano, TRS, Island, NEC and Northeastern Corp. at the time of its performance pursuant to the PSA and Amendment. *See VRG Corp.*, 641 A.2d at 526 (finding "[t]he

unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant").

Therefore, Moving Defendants' Motion to Dismiss LEAD's claim for unjust enrichment (Count III) is **GRANTED without prejudice**.

**IV. CONCLUSION**

For the reasons set forth above, Moving Defendants' Motion to Dismiss is **GRANTED with prejudice** as to LEAD's claim for piercing the corporate veil (Count IV) and **GRANTED without prejudice** as to LEAD's claim for unjust enrichment (Count III).

Date: May 22, 2018　　　　　　　　　　　　　　　　*/s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**